Russell H. Falconer (RF:3231)
Paul J. Reilly (PR:0317)
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112
(212) 408-2500
Attorneys for Plaintiff



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JUDGE CEDARBAUM

```
------------------------------------------------------x
                                                      :
LANARD TOYS LTD.,                                     :     07 CV 1981
                                                      :     Civil Action No.
            Plaintiff,                                :
                                                      :     COMPLAINT
      v.                                              :
                                                      :
DOLLAR GENERAL CORPORATION,                           :
DOLGENCORP, INC. and                                  :
BETTERWAY INDUSTRIAL COMPANY,                         :     DEMAND FOR JURY TRIAL
                                                      :
            Defendants.                               :
                                                      :
------------------------------------------------------x
```

Plaintiff, Lanard Toys Ltd., by its attorneys, Baker Botts L.L.P., for its

complaint against defendants, Dollar General Corporation, Dolgencorp, Inc. and

Betterway Industrial Company, alleges as follows:

### SUMMARY OF THE COMPLAINT

This is an action for copyright infringement, trademark infringement,

unfair competition and related New York state statutory and common law claims.  On

information and belief, defendants have blatantly, willfully and repeatedly infringed

Lanard's copyrights in its toy water sprinklers, and Lanard's trademark FUN

SPLASHERS and distinctive trade dress on and in connection with water toys,

including, toy water sprinklers which were not manufactured, sold, sponsored, or

NY02:578393.1

approved by Lanard.[1]  The following are representative examples of Defendant's infringing "Fun Splasher" product (left) and Lanard's FUN SPLASHERS product (right):

 

On information and belief, if not guilty of counterfeiting, defendants have intentionally engaged in the tortious infringement of Lanard's intellectual property, including, copyrighted works, trade dress and FUN SPLASHERS mark, to deceive and confuse consumers, thereby inducing them to purchase defendants' illegitimate products for their own financial profit.

For several years prior to defendants' blatant tortious conduct, Lanard had supplied defendant, Dollar General Corporation with an assortment of its toys,

---

[1] Representative examples of Lanard's copyrighted works, trade dress and FUNSPLASHER mark are attached as Exhibits 1 and 2 with a representative example of Defendants' counterfeit and/or infringing product bearing the unauthorized use of Lanard's trademark attached as Exhibit 3.

including its FUN SPLASHERS water toys, and anticipated continued sales to Dollar General in the future.  On information and belief, defendant, Betterway Industrial Company intentionally and tortiously interfered with Lanard's contractual business relationship with defendant, Dollar General and Lanard's prospective contractual relationships by marketing to Dollar General toy water sprinklers that infringed Lanard's copyrights, distinctive trade dress and FUN SPLASHERS trademark.  But for defendant, Betterway Industrial's improper means of interfering with Lanard's contractual relationship with Dollar General, Lanard likely would have sold its FUN SPLASHERS water toys to Dollar General.  Instead, defendant Betterway Industrial diverted sales away from Lanard for Betterway's own ill-gotten gain, causing damage to Lanard.

Lanard's claims against defendants arise under the United States Copyright Act, 17 U.S.C. §§101 et seq. (as amended), the United States Trademark (Lanham Act of 1946) Laws, 15 U.S.C. §§1051 et seq. (as amended), particularly under section 43(a), (15 U.S.C. §§ 1125(a)) and under New York statutory and common law.  As a result of defendants' willful copying  and infringement of Lanard's intellectual property, there is a significant likelihood that consumers will be confused, deceived or mistaken as to the source of the goods they are purchasing which will cause irreparable harm and injury to Lanard, its business, copyrights, trade dress and marks.  As a result, Lanard seeks a preliminary injunction, permanent injunction, and the recovery of actual damages, statutory damages, treble damages, profits, costs, attorneys' fees, punitive damages and other relief as more fully set forth below.

**THE PARTIES**

1.      Plaintiff, Lanard Toys Ltd. (hereinafter referred to as "Lanard" or "Plaintiff"), is a corporation organized and existing under the laws of Hong Kong having a place of business located at Energy Plaza, 6th Floor, 92 Granville Road, Tsim

Sha Tsui, Kowloon, Hong Kong.  For more than 25 years, Lanard has been creating, manufacturing, marketing and selling toys throughout the world, including, New York. Indeed, Lanard has marketed and sold a large quantity of toys through its show room in New York, particularly, during the New York International Toy Fair held in February, which Lanard has attended for the last 25 years.

2.      On information and belief, defendant, Dollar General Corporation (hereinafter referred to as "Dollar General"), is a Tennessee corporation having its principal place of business located at 100 Mission Ridge, Goodlettesville, Tennessee 37072, but which conducts business in New York.  On information and belief, Dollar General is a distributor of consumable basics with more than 8,000 retail stores in 35 states, including over 230 stores in New York.  On information and belief, Dollar General also sells a large number of toys and related products in toy departments or sections in many, if not all, of these same retail stores.

3.      On information and belief, defendant, Dolgencorp, Inc. (hereinafter referred to as "Dolgen"), a wholly owned subsidiary of Dollar General Corporation, is a Tennessee corporation having its principal place of business located at 100 Mission Ridge, Goodlettsville, TN 37072-2170.  On information and belief, Dolgen has distributed the infringing products at issue in commerce, including across state lines into New York.

4.      On information and belief, defendant, Betterway Industrial Company (hereinafter referred to as "Betterway"), is a corporation organized and existing under the laws of Hong Kong having a place of business located at 20/F., Philip House, 5 Kimberley Street, Tsim Sha Tsui, Kowloon, Hong Kong.  On information and belief, Betterway is a supplier of, among other items, children's toys.  On information and belief, Betterway's principal target market is the United States.  On information and belief, Betterway's products are displayed and sold in large department stores, including

4

but not limited to, Wal-Mart, Target and Dollar General, known by Betterway to have retail establishments throughout the United States, including in New York where Betterway knew or should have known the infringing products it was selling and distributing would be offered to consumers. (Hereinafter the above named defendants are collectively referred to as "Defendants").

## SUBJECT MATTER JURISDICTION

5.      The First Cause of Action for copyright infringement arises under the Copyright Act of 1976, 17 U.S.C. §101 et seq.  Jurisdiction in this Court over the First Cause of Action is proper pursuant to 28 U.S.C. §§ 1331 and 1338 and the Copyright Laws of the United States, 17 U.S.C. §§ 101 et seq.

6.      The Second Cause of Action arises under the United States Trademark (Lanham) Act of 1946, as amended, 15 U.S.C. §§ 1051-1127.  Jurisdiction in this Court over this cause of action is proper pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

7.      The Third, Fourth, and Fifth Causes of Action arise under New York statutory and common law and are substantially based upon many of the same operative facts as the First and Second Causes of Action.  Jurisdiction in this Court over the Third through Fifth Causes of Action is proper pursuant to 28 U.S.C. § 1338(b) and on the basis of supplemental jurisdiction.

## PERSONAL JURISDICTION

8.      Personal jurisdiction over the Defendants is proper under §§ 301 and 302 of the State of New York's Civil Practice Law & Rules pursuant to Rule 4 of the Federal Rules of Civil Procedure and under the Due Process Clause of the Fourteenth Amendment to the Federal Constitution.  On information and belief, this

court has personal jurisdiction over the Defendants who regularly conduct business in this district, have engaged in tortious conduct within the state of New York, and/or have engaged in tortious conduct outside the state of New York which has caused injury to Lanard within this jurisdiction.

9.      On information and belief, Defendant, Dollar General operates and/or offers goods at over 230 retail stores in New York through which it regularly conducts business and has sold products that infringe Lanard's valuable intellectual property.  On information and belief, Dolgen regularly and systematically distributes products to Dollar General stores in New York, including the infringing products at issue which bear its trade name.  On information and belief, Dollar General's stores are regularly visited by patrons in and residents of New York, and Defendants' infringing products are regularly shipped into New York and purchased by patrons or residents of New York, who have observed  (i) Defendants' display and publication of works substantially similar to Lanard's proprietary copyrighted works and (ii) Defendants' unauthorized and infringing use of Lanard's trademark FUN SPLASHERS and related trade dress.

10.      On information and belief, Betterway markets, offers for sale, distributes and/or sells toy water sprinklers that infringe Lanard's FUN SPLASHERS mark, related trade dress for its toy water sprinklers and Lanard's copyrights in the United States.  On information and belief, Betterway has contractual or business relationships with nationwide retailers, including Dollar General, to supply toy water sprinklers to them in the United States that infringe Lanard's intellectual property rights as set forth herein.  On information and belief, Betterway, its officers and agents had

NY02:578393.1

knowledge of, directed, controlled, supervised and/or took action which knowingly contributed to the unlawful activities engaged in by Defendants as set forth herein in New York and elsewhere, and/or engaged in tortious conduct outside the State of New York causing injury to Lanard within this jurisdiction.

11.   On information and belief, Defendants expected or reasonably should have expected that their actions would have consequences in New York and impact Lanard's business in this state.  Further, on information and belief, Defendants derive substantial revenue from interstate commerce through their distribution and sale of goods throughout the United States.

### VENUE

12.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 in that a substantial part of the events and acts giving rise to the claims occurred in this district, Plaintiff's claims arise out of the business transacted by Defendants in this district and pursuant to 28 U.S.C. §1400(a), Defendants or their agents may be found in this district.

### STATEMENT OF FACTS

I.     LANARD'S BUSINESS AND INTELLECTUAL PROPERTY RIGHTS

A.     Lanard's Business and Products

13.   Lanard is in the business of creating, designing, manufacturing and selling children's toys throughout the world, including the United States.  Lanard sells toys of all sorts, including toy water sprinklers, water guns, bubble toys, various toy tools and accessories (e.g., hedge trimmer, chain saw, weed trimmer, jack hammer,

NY02:578393.1

pliers, screwdrivers, goggles, etc.), vehicles (e.g., cars, trucks, boats and aircraft), dolls and toy ponies, action figures, pre-school toys, flying toys, and others.

14.     In the United States, Lanard distributes its toys to most of the major retail chains, including, Dollar General, KMart, Wal-Mart, J.C. Penney, Target, Kay-Bee, Toys-R-Us, Value City, Sears, BJ's, and to numerous smaller customers, all of whom resell Lanard's products to the public.  Lanard's markets also include Europe, the Middle East, Latin America, Australia, and elsewhere.

B.   The Trademark At Issue

15.     Since at least as early as 1998, Lanard began developing water toys such as water guns and toy sprinklers for outdoor use.  In association with a line of its water toys, Lanard created and adopted the inherently distinctive marks FUN SPLASHER, FUN SPLASHERS and variants thereof.  Specifically, Lanard commenced use of the name and mark FUN SPLASHER in connection with toy water sprinklers in or around 1998.  In 1999, U.S. Trademark Registration No. 2,300,935 was issued for the mark FUN SPLASHER for "toy water sprinklers and toy lawn sprinklers."  Although the registration inadvertently expired on  September 16, 2006, after learning of the status of its registration, Lanard promptly refiled trademark application Serial No. 77/019,272 for the mark FUN SPLASHERS in connection with "water squirting toys, toy water sprinklers and toy lawn sprinklers".

16.     Lanard has used the mark FUN SPLASHER or FUN SPLASHERS exclusively and continuously from 1998 to the present in connection with water toys, including, water squirting toys, toy water sprinklers and toy lawn sprinklers.  (Hereinafter the foregoing marks as used, registered and/or applied for are referred to as

"FUN SPLASHERS").  Indeed, millions of FUN SPLASHERS water toys have been sold.

17.     Since 1998, Lanard has continuously and prominently featured, displayed and promoted its FUN SPLASHERS water toys to customers and potential customers via catalogs, internet and trade shows, in New York, Hong Kong and elsewhere.  During that time, Lanard's FUN SPLASHERS toys have been continuously available for purchase on the shelves of such leading retailers as Wal-Mart, , Target, Kay-Bee, KMart, Toys-R-Us, Eckerd, and BJ's, as well as defendant, Dollar General. The toys are and always have been in plain sight, ready and available for anyone to purchase.

18.     Lanard has invested substantial sums in research and development costs, developing artwork, text, packaging designs, molds and tooling for the production of its FUN SPLASHERS water toys, and in promoting its products in catalogs and at trade shows for the last eight (8) years.

19.     From 1998 through 2006, Lanard sold millions of dollars worth of FUN SPLASHERS toys.  Lanard enjoys a substantial demand for these products. Indeed, Lanard's FUN SPLASHERS water toys represent a significant portion of its business and its FUN SPLASHERS mark has become well known to consumers and the trade by virtue of widespread, long, continuous and exclusive use thereof.

20.     By virtue of the extensive scope of the consumer sales made, and the substantial sums spent to promote products under the FUN SPLASHERS mark, it has acquired a strong secondary meaning in the minds of the purchasing public and the trade, and is now highly distinctive and serves uniquely to identify Lanard's water toys.

9

Through widespread and favorable public acceptance and recognition, Lanard's FUN SPLASHERS mark enjoys tremendous goodwill and has become an asset of incalculable value as a symbol of Lanard's products.

      B.   ·   <u>The Trade Dress At Issue</u>

      21.   In 1998 as part of its FUN SPLASHERS line, Lanard commenced designing and sculpting a toy water sprinkler resembling a long stemmed flower and developed packaging for it in 2000.  Lanard's sales of this particular FUN SPLASHERS toy water sprinkler commenced in 2001.  Representative examples of Lanard's FUN SPLASHERS toy water sprinkler and product packaging are attached hereto as Exhibits 1 and 2.

      22.   The FUN SPLASHERS toy water sprinkler displays a distinctive combination of elements and configurations that, in total, comprises a distinct, non-functional product design.  Some of the discrete elements that comprise Lanard's protectable trade dress for its FUN SPLASHERS toy water sprinkler include the following: (1) a unique flower shape comprised of a long, thin green plastic stem and a brightly colored flower shaped sprinkler head; (2) several strands of brightly colored thin flexible tubing connected to the center of the sprinkler head; (3) a brightly colored two-tiered petal design consisting of curvilinear petal shapes fashioned out of foam fabric; (4) a design consisting of several interlocking circular shapes in the center of the sprinkler head; and (5) a brightly colored stake at the bottom of the stem. (See Ex. 2).

      23.   The packaging associated with Lanard's FUN SPLASHERS toy · water sprinkler is also comprised of an inherently distinctive combination of elements and configurations that, in total, creates a distinct, non-functional trade dress.  Some of

the unique elements that comprise Lanard's protectable trade dress for its FUN SPLASHERS product packaging include the following: (1) a rectangular shaped cardboard backing with uniquely shaped cut outs; (2) bright blue background containing a brightly colored illustration of the toy water sprinkler emitting water in the lower right hand corner; (3) the mark FUN SPLASHERS in white stylized lettering with red shading across the top of the packaging; (4) original text on both the front and the back of the packaging containing product information and directions; (5) a diagram on the upper right hand corner of the back of the packaging illustrating the assembly instructions; (6) a hole in the middle of the packaging through which the flower head is inserted; and (7) plastic straps at the top and bottom of the right side of the packaging to which the stem is affixed. (See Ex. 1).

24.      The FUN SPLASHERS toy water sprinkler consists of a green plastic post, or stem, which hooks up to a garden hose, and a flower shaped sprinkler head which attaches to the top of the stem. When the hose is turned on, water flows through the stem and out of the sprinkler head through decorative tubing located in the center of the flower. The FUN SPLASHERS toy water sprinkler is offered for sale in specially designed packaging to present an appealing product to the consumer.

25.      Since 2001, Lanard has continuously and prominently featured, displayed and promoted its FUN SPLASHERS toy water sprinkler and related trade dress to customers and potential customers via catalogs and trade shows. During that time, Lanard's FUN SPLASHERS toy water sprinkler and related trade dress have been available for purchase on the shelves of such retailers as Dollar General, Wal-Mart, J.C.

Penney, Target, Kay-Bee, KMart, Toys-R-Us, Eckerd, and BJ's.  The toy is and always

has been in plain sight, ready and available for anyone to purchase.

26.     Lanard has invested substantial sums in research and

development costs, developing artwork, text, packaging designs, molds and tooling for

the production of its FUN SPLASHERS toy water sprinkler, and in promoting its

product in catalogs and at trade shows.

27.     Lanard enjoys a substantial demand for this product.  Indeed,

Lanard's trade dress embodied in this FUN SPLASHERS toy water sprinkler has

become well known to consumers and the trade by virtue of widespread, long,

continuous and exclusive use thereof.

28.     During the past five years, Lanard has sold hundreds of

thousands of units of this FUN SPLASHERS toy water sprinkler, generating gross sales

of hundreds of thousands of dollars.  As a result of the substantial sales of Lanard's

FUN SPLASHERS toy water sprinkler product for over 5 years and the substantial

amounts of time, effort, and money expended over the years by Lanard in creating,

promoting and popularizing this product, the purchasing public and customers of

Lanard associate the FUN SPLASHERS toy water sprinkler trade dress, as well as the

product packaging exclusively with Lanard.  Through widespread and favorable public

acceptance and recognition, Lanard's FUN SPLASHERS toy water sprinkler trade dress

and package design have become assets of incalculable value as symbols of Lanard's

business and products.

C.     Lanard's Copyrights

29.     In or about 1998, Lanard commenced creating original distinctive

visual works in the form of product designs for its toy water sprinkler.  Such visual

works culminated in the creation of the FUN SPLASHERS toy water sprinkler in 1999.

The visual works were developed through the creative selection, arrangement and combination of sculptural elements and configurations that, when joined together, create distinct, unique and original designs and trade dress. The core elements include many of those that comprise Lanard's FUN SPLASHERS toy water sprinkler trade dress. Representations of the copyrighted works for the FUN SPLASHERS toy water sprinkler first published in 2001 are attached hereto as Exhibit 2.

30.     In or about 2000, Lanard created original distinctive visual works in the form of packaging designs for its toy water sprinkler. The visual works were developed through the creative selection, arrangement and combination of artistic, graphic and textual elements and configurations that, when joined together, create distinct, unique and original designs. The core elements include many of those that comprise Lanard's FUN SPLASHERS toy water sprinkler product packaging trade dress. Representations of the copyrighted works for the FUN SPLASHERS toy water sprinkler product packaging first published in 2001 are attached hereto as Exhibit 1. (Hereinafter the foregoing works which are the subject of United States Copyright Registrations shall be referred to as the "Copyrighted Works").

31.     The Copyrighted Works and the selection and arrangement of the sculptural elements and configurations comprising the works are wholly original with Lanard and constitute copyrightable subject matter fixed in a tangible medium of expression under the copyright laws of the United States.

32.     Lanard owns United States Copyright Registrations for the Copyrighted Works, namely U.S. Reg. Nos. VA 1-388-950 (toy design), VA 1-363-755 (package design and text) and VA 1-388-951 (artwork on packaging), which issued on December 13, 2006 on an expedited basis as a result of this matter. True and correct copies of the aforementioned Copyright Registrations are attached hereto as Exhibits 4, 5, and 6, respectively.

33.     Since first introducing the Copyrighted Works and continuing to the present, Lanard has complied in all respects with the Copyright Act of 1976, 17 U.S.C. §§ 101, et seq., and all other laws governing copyright.  Lanard is the owner of all rights, title and interest in and to the copyrights in these Copyrighted Works. Lanard's Copyrighted Works and Copyright Registrations constitute valuable assets of Lanard's business.

34.     As a result of the time, effort and money invested in its business, and the quality of its products, Lanard has achieved a reputation for excellence and enjoys a substantial demand for and sales of its products.

35.     By virtue of the extensive scope of the consumer sales made, and the sums spent to promote and market products under the FUN SPLASHERS mark and in connection with Copyrighted Works and the related trade dress, such marks and trade dress have acquired a strong secondary meaning in the minds of the purchasing public and the business community, and are now highly distinctive, well known and serve uniquely to identify Lanard's products.  Through widespread and favorable public access to, and acceptance and recognition of, the FUN SPLASHER mark and related trade dress identified herein, they enjoy tremendous goodwill and along with the Copyrighted Works, have become assets of incalculable value to Lanard.

**DEFENDANTS' UNLAWFUL ACTIONS**

I.      DEFENDANTS' UNFAIR COMPETITION AND COPYRIGHT INFRINGEMENT

36.     On information and belief, long after Lanard's first use of the FUN SPLASHER mark in 1998, its first use of its proprietary trade dress in 2001 and after the first publication of its Copyrighted Works, Defendants without the permission or authorization of Lanard and with complete knowledge and notice of Lanard's intellectual property rights: (i) engaged in a pattern of copying, displaying and

14

distributing content, textual works and products substantially similar, if not identical, to Lanard's Copyrighted Works; (ii) made unauthorized use of the FUN SPLASHERS mark in connection with the marketing, offering for sale and sale of water toys that were not manufactured by Lanard or subject to its quality control standards, and without authorization, approval or permission of Lanard, thereby, engaging in trademark infringement, unfair competition and false advertising under federal or New York state law; (iii) made unauthorized use in commerce of product and packaging trade dress in connection with the marketing, offering for sale and sale of water toys that are confusingly similar to Lanard's trade dress in its FUN SPLASHERS water toys and product packaging, thereby engaging in trade dress infringement and unfair competition under federal and New York state law; and (iv) intentionally interfered with Lanard's business relations by offering to sell essentially counterfeit FUN SPLASHERS water toys, thereby wrongfully diverting sales from Lanard.  Representative examples of the products marketed by Defendants that infringe Lanard's FUN SPLASHERS mark, trade dress and Copyrighted Works are attached hereto as Exhibit 3.

　　　　37.　　In or about May 2006, Lanard became aware that Dollar General was offering for sale a counterfeit toy water sprinkler under the name "Fun Splasher" in packaging confusingly and/or substantially similar, if not identical, to Lanard's FUN SPLASHERS toy water sprinkler packaging, making clear Defendants' blatant intent to copy Lanard's distinctive trademark, trade dress and Copyrighted Works.  (See Ex. 3).  The parties respective products and trade dress are virtually indistinguishable and Defendants' use of "Fun Splasher" is a spurious and colorable imitation of Lanard's FUN SPLASHERS mark.  Further, Defendants make unauthorized use of the infringing mark "Fun Splashers" on toys marketed to and sold through identical channels of trade as those of Lanard's FUN SPLASHERS water toys, including defendant, Dollar General's own stores.

38.     On information and belief, Defendants are marketing, advertising and promoting products embodying trade dress confusingly similar to Lanard's FUN SPLASHERS toy water sprinkler trade dress and packaging design and substantially similar to Lanard's Copyrighted Works.  There is no legal competitive reason for Defendants to slavishly copy Lanard's products.  There are many product configurations and designs that can be employed for toy water sprinklers as demonstrated, in part, by other toy companies offering toy water sprinklers which do not infringe Lanard's trademark, trade dress or Copyrighted Works.

39.     On information and belief, Defendants repeatedly and continuously copied, published, distributed, displayed and sold toy water sprinklers substantially similar to Lanard's Copyrighted Works which are the subject of Lanard's copyright registrations.  On information and belief, the copying illustrated in Exhibit 3 hereto is representative of Defendants' unauthorized and willful copying of Lanard's Copyrighted Works.

40.     Defendants' unauthorized use of Lanard's FUN SPLASHERS mark and proprietary trade dress rights in its toy water sprinkler is likely to confuse consumers into believing that Defendants' products emanate from, or are sponsored or authorized by, Lanard, when they are not.

41.     Defendants' conduct is likely to confuse, mislead and deceive the purchasing public and the trade as to the authorship, source or sponsorship of its goods and/or as to an affiliation or relationship between Lanard and the Defendants.

42.     On information and belief, Defendants blatantly, intentionally and unlawfully copied Lanard's FUN SPLASHERS trademark, Lanard's FUN SPLASHERS toy water sprinkler trade dress and packaging trade dress, and Lanard's Copyrighted Works to unfairly compete with Lanard, usurp its customers, and/or to falsely and fraudulently represent to consumers and customers that it was the originator

NY02:578393.1

and designer of the "Fun Splasher" sprinkler, which was first created and marketed by Lanard many years before Defendants.

43.   On information and belief, because of Lanard's long, extensive and substantially exclusive use and sale of its water toys under the mark FUN SPLASHERS, in packaging embodying Lanard's proprietary trade dress and Copyrighted Works, and Lanard's significance as a manufacturer and supplier of toys, as well as defendants, Dollar General's and/or Dolgen's prior purchase of products from Lanard, Defendants were or should have been, at all times, fully aware of Lanard's trademark, trade dress rights and copyrights.  On information and belief, Defendants' unauthorized use of marks and dress confusingly similar to Lanard's FUN SPLASHERS mark and related trade dress was and is conducted with actual knowledge of the reputation and goodwill in Lanard's intellectual property, and its ownership of the name and mark FUN SPLASHERS, as well as proprietary trade dress and copyrights, and was done willfully, wantonly and in bad faith.

II.   <u>DEFENDANT BETTERWAY'S INTENTIONAL INTERFERENCE WITH LANARD'S BUSINESS</u>

44.   On information and belief, defendant, Betterway contracted with at least one of Lanard's customers for its "Fun Splasher" sprinkler, namely defendant, Dollar General, for the purchase of approximately 80,000 sprinkler units at a price of about $1.50 per unit, which substantially undercuts Lanard's price because defendant, Betterway did not incur the costs for designing, tooling, manufacturing and promoting the products.  A copy of a purchase order reflecting Dollar General's purchase of the infringing sprinklers is attached hereto as Exhibit 7.  Dollar General has long been a Lanard customer to whom Lanard has sold thousands of toys.  In the past several years, Lanard has sold tens of thousands of units of its toys to Dollar General, certain of which

employ Lanard's Copyrighted Works and proprietary trade dress. Specifically, in August 2003, Dollar General purchased 45,672 FUNSPLASHERS water sprinklers. Nonetheless, in 2006, rather than buying from Lanard, Dollar General purchased at least 80,000 units of its infringing "Fun Splasher" water toys from defendant, Betterway. On information and belief, but for Betterway's unfair and improper infringing conduct, Dollar General would have purchased these products from Lanard.

45.     On information and belief, as a result of defendant, Betterway's unlawful actions, certain Lanard customers have not placed orders with or purchased Lanard's toy water sprinklers and Lanard has lost many potential sales. On information and belief, but for defendant, Betterway's unlawful conduct, customers, like Dollar General and Dolgen, would have continued their business relationships with Lanard or purchased these products from Lanard, rather than Betterway.

46.     On information and belief, defendant, Betterway knowingly, willfully and intentionally interfered with Lanard's business relationships and prospective business contracts with customers.

III.   **DEFENDANTS ON NOTICE**

47.     On October 12, 2006, Lanard sent a cease and desist letter to defendant, Dollar General advising that Lanard considered Dollar General's sale of an identical counterfeit toy in packaging nearly identical to Lanard's FUN SPLASHERS packaging to be unlawful and an infringement of Lanard's intellectual property rights. Lanard demanded that Dollar General immediately cease and desist its unlawful activities, remove all counterfeit "Fun Splasher" products from its stores, and deliver all said products to Lanard for disposal.

48.     On November 14, 2006, defendant, Dollar General forwarded the cease and desist letter from Lanard's to defendant, Betterway. On November 16, 2006, Betterway contacted Lanard directly, asserting that Betterway would discuss the letter

18

with Lanard within days. In its subsequent communications, Betterway failed to provide any assurances that it would cease its infringing conduct, and on information and belief, Defendants' infringing conduct has continued.

49. The relevant public will be confused, mistaken and deceived into wrongfully attributing to Lanard the source or sponsorship of Defendants' goods as a result of Defendant's unlawful use of Lanard's trademark, trade dress and Copyrighted Works. Indeed, Lanard has no control over the quality of Defendants' goods. Such confusion and copyright infringement threatens to irreparably injure Lanard's goodwill, business reputation and intellectual property.

50. Notwithstanding Lanard's extensive prior use of and/or rights in the FUN SPLASHERS trademark, FUN SPLASHERS toy water sprinkler trade dress and packaging design and Copyrighted Works, Defendants, without the consent of Lanard, have adopted and caused to be used in commerce a mark that infringed Lanard's FUN SPLASHERS mark, products embodying trade dress confusingly similar to Lanard's trade dress, and substantially similar to Lanard's Copyrighted Works to unlawfully solicit sales.

51. The display, promotion, distribution and sale by Defendants of products incorporating an infringing mark and product and packaging designs confusingly similar, if not identical, to Lanard's FUN SPLASHERS trade dress and substantially similar to Lanard's Copyrighted Works is misleading, fraudulent and is likely to and will inevitably cause confusion, mistake and deception of the public into believing falsely that Defendants are sponsored by, endorsed by, or affiliated with Lanard, or that Defendants' products emanate from, is connected with, or is sponsored or authorized by Lanard, when they are not.

52. Defendants' display, promotion, distribution and sale of products confusingly similar to Lanard's FUN SPLASHERS toy water sprinkler trade dress and

packaging design, and substantially similar to Lanard's Copyrighted Works, was and is conducted with actual knowledge of the reputation and goodwill in Lanard's FUN SPLASHERS mark, trade dress and Copyrighted Works and/or with the intent of trading off such good will, all such egregious conduct causing harm and injury to Lanard.

## DAMAGE TO LANARD

53.     On information and belief, the relevant public and the trade will be confused, mistaken and deceived into wrongfully attributing to Lanard the source or sponsorship of Defendants' products as a result of Defendants' unlawful use of Lanard's FUN SPLASHERS mark, trade dress and Copyrighted Works.  Certainly, Lanard has no control over the quality of Defendants' products.  Such confusion and misappropriation threatens to irreparably injure Lanard's goodwill, business reputation and intellectual property.  Moreover, defendant, Betterway's intentional interference with Lanard's contractual business relationships with its customers and prospective business opportunities threatens to damage and destroy the market for Lanard's products.

54.     Defendants' actions as described above (1) infringe Lanard's copyrights, (2) are likely to affect interstate commerce by deceiving or confusing the public throughout the nation including in New York; (3) constitute a false designation of the origin of Defendants' goods; (4) suggest a non-existent connection between Defendants and Lanard's FUN SPLASHERS branded products; and (5) falsely suggest that Lanard has sponsored, licensed or approved of Defendants' products.  Such wrongdoing has and will continue to irreparably injure Lanard's goodwill, business reputation, intellectual property, copyrights, trademark and trade dress.

## FIRST CAUSE OF ACTION
### (Copyright Infringement - 17 U.S.C. §§ 101 et seq.)

55.     Lanard realleges and incorporates herein by reference the allegations of paragraphs 1 to 54 of the Complaint as set forth above.

56.     At least as early as 1999, Lanard created and in 2001 published the Copyrighted Works for its FUN SPLASHERS toy water sprinkler and product packaging associated therewith.

57.     Lanard developed and expended a substantial amount of its own skill, labor, judgment, material and resources in creating the Copyrighted Works, together with the molds, tooling, reproductions, promotions, artwork, text and the derivative works and products relating thereto.

58.     Lanard's Copyrighted Works and the literary, sculptural and graphic materials therein constitute original works of authorship and copyrightable subject matter under the laws of the United States.

59.     The Copyrighted Works and the literary, sculptural and graphic materials therein have never been dedicated to the public, nor have they fallen into the public domain.  Since their creation, the Copyrighted Works have been marketed, published and distributed by Lanard with a copyright notice.  Lanard has complied in all respects with the United States Copyright Act of 1976 and all other laws governing copyrights.

60.     At all times pertinent to this Complaint, Lanard has been and still is, the sole and exclusive owner of all rights, title and interest in and to the Copyrighted Works, including all the copyrights therein.  Lanard has never assigned, licensed or otherwise transferred any of these rights, including its exclusive copyrights or interest in the Copyrighted Works, to Defendants.  Nor has Lanard ever authorized or given permission to Defendants to copy or use any of its Copyrighted Works or to create derivative works therefrom.

NY02:578393.1

61.     Lanard owns United States Copyright Registrations for the Copyrighted Works, namely U.S. Reg. Nos. VA 1-388-950 (toy design), VA 1-363-755 (package design and text) and VA 1-388-951 (artwork on packaging).

62.     On information and belief and notwithstanding Lanard's valid copyrights, after the creation, use, publication and exploitation of the copyrights in and to the Copyrighted Works, Defendants willfully infringed Lanard's copyrights in the Copyrighted Works by copying the Copyrighted Works and/or preparing, reproducing, manufacturing and/or distributing infringing work(s) that derive from Lanard's Copyrighted Works, all without Lanard's permission, license, consent or authorization; and Defendants have done so with knowledge of Lanard's copyrights in the Copyrighted Works.

63.     On information and belief, Defendants had repeated access to the Copyrighted Works by virtue of the open and notorious sale of Lanard's products embodying the Copyrighted Works at retail outlets selling the products, including, but not limited to, defendant, Dollar General's own stores.

64.     On information and belief, a substantial similarity, as determined by an ordinary observer, exists between the "Fun Splasher" sprinkler marketed and sold by Defendants and Lanard's Copyrighted Works.

65.     Lanard has demanded that Defendants cease and desist from their acts of copyright infringement. Defendants have not affirmatively agreed to cease and desist and have continued to infringe Lanard's copyrights.

66.     Lanard has no adequate remedy at law against this copyright infringement. Unless Defendants are preliminarily and permanently enjoined by the Court, Lanard will continue to suffer irreparable harm.

## SECOND CAUSE OF ACTION
### (Federal Unfair Competition – Under the Lanham Act, §43(a))

67.    Lanard realleges and incorporates herein by reference the allegations of paragraphs 1 to 66 of the Complaint as set forth above.

68.    Lanard's FUN SPLASHER mark and variants thereof, as used on or in connection with water toys is inherently distinctive, has acquired strong secondary meaning and has become exclusively associated with Lanard through its continuous, extensive and widespread use of such mark in marketing, promoting and selling its products over the past eight (8)years.  As a result, the FUN SPLASHER mark exclusively identifies Lanard and its products.

69.    Lanard's trade dress for its FUN SPLASHERS product packaging design is inherently distinctive and both the product packaging and the toy water sprinkler product configuration have acquired distinctiveness and secondary meaning through long, continuous and substantially exclusive use and have become associated with, and hence identify, Lanard's business and toy sprinkler products. Lanard's trade dress is not functional.

70.    By reason of Defendants' wrongful display, marketing, promotion and sale of sprinkler products bearing marks and embodying trade dress confusingly similar to Lanard's FUN SPLASHERS mark and trade dress, purchasers and prospective purchasers of Defendants' products are deceptively led to believe that Defendants' products originate from Lanard or originate from, are sponsored or otherwise approved by, Lanard, when in fact Defendants have no connection whatsoever with Lanard in regard to such products.

71.    Defendants' unauthorized and willful use in commerce of products bearing marks and embodying trade dress confusingly similar to Lanard's mark and trade dress constitutes unfair competition and trade dress infringement, which is likely to cause confusion, or to cause mistake or to deceive consumers as to an affiliation, connection or association between Plaintiff and Defendants or as to the

NY02:578393.1

nature, quality and characteristics of Defendants' goods and commercial activities, in and affecting interstate commerce all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

72.    As a proximate result of the acts of Defendants as alleged herein, Lanard has suffered and will continue to suffer great damage to its business, goodwill, reputation, and profits, while Defendants profit at Lanard's expense.

73.    Lanard has no adequate remedy at law for this unfair competition.  Unless Defendants are preliminarily and permanently enjoined by the Court, Lanard will continue to suffer irreparable harm.

**THIRD CAUSE OF ACTION**
**(Unfair Competition — New York Common Law)**

74.    Lanard realleges and incorporates herein by reference the allegations of paragraphs 1 to 73 of the Complaint as set forth above.

75.    Lanard's trademark FUN SPLASHERS and trade dress for its toy water sprinkler and packaging design have acquired a strong secondary meaning by virtue of Lanard's long, continuous and substantially exclusive use of such mark and trade dress in United States interstate commerce.

76.    Defendants' wrongful promotion and sale of products bearing marks and embodying trade dress confusingly similar to Lanard's FUN SPLASHERS mark and trade dress in its toy sprinkler and product packaging as alleged herein are likely to deceive the public into believing falsely that Defendants' products emanate from Lanard and/or that there is a connection between Lanard and Defendants.

77.    Defendants have unfairly competed with Lanard in violation of the New York common law by displaying, promoting, offering for sale and selling products deliberately copying Lanard's FUN SPLASHERS mark, toy water sprinkler

24

trade dress and packaging design, with the intent to induce the public into believing that the products and trade dress originate with Defendants and/or that they are connected with Lanard, thereby allowing Defendants to trade upon the reputation and goodwill of Lanard's mark and trade dress.

78. On information and belief, Defendants' unfair competitive conduct in violation of New York common law was, and continues to be, a deliberate attempt by Defendants to knowingly misappropriate Lanard's proprietary trademark and trade dress, and to trade off the good will and valuable reputation of Lanard. Such action evidences a willful attempt by Defendants to usurp the goodwill in the marks and trade dress owned by Lanard, and constitutes unfair competition in violation of New York common law.

79. As a proximate result of the acts of Defendants as alleged herein, Lanard has suffered and will continue to suffer great damage to its business, goodwill, reputation, and profits, while Defendants are profiting at Lanard's expense.

80. Lanard has no adequate remedy at law against this unfair competition. Unless Defendants are preliminarily and permanently enjoined by the Court, Lanard will continue to suffer irreparable harm.

81. On information and belief, Defendants' acts were committed intentionally, willfully and wantonly and with oppression, fraud and malice toward Lanard. Lanard is therefore entitled to an award of punitive damages for the sake of example and by way of punishing Defendants.

## FOURTH CAUSE OF ACTION
**(Trademark Infringement - New York Common Law)**

82.     Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 to 81 of the Complaint as set forth above.

83.     Plaintiff is the first and only party entitled to use its name and mark FUN SPLASHERS or variants thereof and its toy water sprinkler trade dress and packaging design in connection with the sale and distribution of toys and related accessory items in the United States.  Plaintiff's FUN SPLASHERS mark and trade dress are inherently distinctive and/or have acquired distinctiveness and secondary meaning and are well known in the toy industry and to consumers, and they have become exclusively associated in the minds of the public with Lanard's business and products.

84.     Defendants have wrongfully used a mark and trade dress that are confusingly similar to Lanard's mark and trade dress in connection with the production, advertising, promotion and offering for sale of products as alleged herein with intentional disregard for Lanard's rights.  As a result of such actions, Defendants are misleading the public into believing that the products they are advertising, promoting, and selling are authored by them or are manufactured, sold, offered for sale, sponsored or approved by Lanard, or that there is otherwise a connection between Plaintiff's and Defendants' businesses or goods, all in violation of New York common law concerning the protection of trademarks.

85.     On information and belief, Defendants have intentionally and willfully used marks and trade dress confusingly similar to Lanard's mark and trade dress in commerce without authorization in a deliberate attempt to misappropriate and trade off the goodwill, fame and valuable reputation of Plaintiff and its trademark and trade dress, and have derived unlawful gains, profits and advantages from their infringements.

NY02:578393.1

86.     As a proximate result of the acts of Defendants as alleged herein, Lanard has suffered and will continue to suffer great damage to its business, goodwill, reputation, and profits, while Defendants are profiting at Lanard's expense.

87.     Lanard has no adequate remedy at law against this trademark infringement. Unless Defendants are preliminarily and permanently enjoined by the Court, Lanard will continue to suffer irreparable harm.

88.     On information and belief, Defendants' acts were committed intentionally, willfully and wantonly and with oppression, fraud and malice toward Lanard. Lanard is therefore entitled to an award of punitive damages for the sake of example and by way of punishing Defendants.

## FIFTH CAUSE OF ACTION
### (Tortious Interference With Prospective Economic Advantage – New York Common Law)

89.     Lanard realleges and incorporates herein by reference the allegations of paragraphs 1 to 88 of the Complaint as set forth above.

90.     Lanard had many valuable existing economic relationships prior to defendant, Betterway's unlawful behavior. For example, Dollar General has long been a Lanard customer to whom Lanard has sold thousands of toys. Lanard anticipated that in view of its business relationship and prior contracts with this customer it would receive future orders from this customer. But for defendant, Betterway's unlawful conduct, Lanard would have received additional orders for its FUN SPLASHERS products from this customer.

91.     Over the past several years, Lanard has sold hundreds of thousands of units of toy water sprinklers to many different customers in the United States, amounting to millions of dollars in gross sales for Lanard. Defendant, Betterway's unauthorized use of a mark that infringes Lanard's FUN SPLASHERS mark and unauthorized creating, marketing, distribution and sale of toys and packaging

27

embodying trade dress confusingly similar to Lanard's toy water sprinkler trade dress or packaging design or substantially similar to its Copyrighted Works to divert sales away from Lanard to its customers interferes with Lanard's existing and prospective business relationships.

92.    On information and belief, defendant, Betterway was aware of Lanard's business relationship with its customers, particularly, Dollar General.

93.    On information and belief, defendant, Betterway was aware of Lanard's prospects for obtaining more business relationships and sales to third parties as a result of Lanard's production and sale of toy water sprinklers embodying its unique trade dress and Copyrighted Works.

94.    The acts of defendant, Betterway alleged herein were intended to and did interfere with Lanard's relationship with its existing customers, such as Dollar General, and the economic advantage arising from those business relations.

95.    On information and belief, defendant, Betterway has succeeded in taking business away from Lanard by its wrongdoing and has caused economic injury to Lanard and injury to Lanard's business reputation.

96.    Such actions by defendant, Betterway constitute tortious interference with Lanard's prospective business relations in violation of New York law.

97.    As a proximate result of defendant, Betterway's tortious interference with Lanard's ability to transact business, Lanard has been and continues to be irreparably harmed.

98.    Because of the intentional nature of the injury to Lanard caused by defendant, Betterway's oppressive and malicious conduct, Lanard should also be awarded punitive damages against Betterway for the sake of example and by way of punishing Betterway.

99.     Lanard hereby asserts this Fifth Cause of Action against defendant, Betterway.

**PRAYER FOR RELIEF**

WHEREFORE, Lanard prays for entry of judgment and for relief against Defendants as follows:

1.      That Defendants, their officers, agents, servants, employees and/or representatives and all other persons, firms or corporations in active concert or participation with them, be preliminarily and thereafter, permanently enjoined and restrained from: (a) copying, displaying, publishing, creating derivative works from or otherwise infringing any of Lanard's copyrights in and to the Copyrighted Works; (b) all use, in any manner or form, of "Fun Splasher", Lanard's FUN SPLASHERS mark or any other trade name, trademark, service mark, domain name, designation, symbol or device containing Lanard's FUN SPLASHERS mark or any variant or any colorable imitations thereof that is likely to confuse consumers as to the source or sponsorship of Defendants' businesses, web sites, products or services or as to the nature, quality or characteristics of Defendants' products; (c) all use, in any manner or form, of trade dress that embodies or is confusingly similar to Lanard's trade dress in its toy water sprinklers or product packaging shown in Exhibits 1 and 2 attached hereto, including, but not limited to the unauthorized and infringing  trade dress shown in Exhibit 3 attached hereto; (d) making any false or misleading representation concerning the source, nature, quality or characteristics of their respective businesses or products bearing, using, or advertised or sold by Defendants under or in connection with the mark "Fun Splasher", FUN SPLASHERS or variants or that embody or are confusingly similar to Lanard's trade dress in its toy water sprinklers or product packaging shown in Exhibits 1 and 2 attached hereto, including, but not limited to the unauthorized and infringing trade dress shown in Exhibit 3 attached hereto; and (e) doing any act or thing

calculated or likely to cause confusion or mistake in the minds of members of the public or the trade, or prospective purchasers of Defendants' products, as to the source of products produced, distributed, sold or offered for sale thereby, or likely to deceive members of the public or the trade, or prospective purchasers, into believing that Lanard's products, trade dress or Copyrighted Works are created or authored by Defendants and/or that there is some connection between Defendants and Plaintiff or that Defendants' products are being manufactured, produced, distributed, sold or offered for sale with Lanard's consent, approval or authorization;

2.     That Defendants be ordered to cancel all orders for the "Fun Splasher" toy water sprinkler, products embodying trade dress confusingly similar to Lanard's toy water sprinkler trade dress or packaging design or substantially similar to its Copyrighted Works, or any variant thereof, together with a refund of all monies received for such orders;

3.     That Defendants give notice to their customers that the orders have been cancelled because Defendants or those acting in concert with Defendants cannot supply the products;

4.     That Defendants, pursuant to 15 U.S.C. § 1118, be ordered to deliver up for destruction all labels, signs, prints, catalogues, sell sheets, purchase orders, invoices, packages, wrappers, receptacles, articles, advertisements and/or promotional materials in their possession referring or relating to the infringing products, or other products incorporating trade dress confusingly similar to Lanard's trade dress or substantially similar to its Copyrighted Works; and all plates, molds, matrices, tooling, computer programs and other means of making the same;

5.     Requiring Defendants to deliver up to be impounded during the pendency of this action all unauthorized copies, plates, molds, matrices, tooling, computer programs or other components used in manufacturing products or copies

constituting an infringement of Lanard's trade dress or Copyrighted Works or derivative works incorporating such Copyrighted Works and any and all merchandise, goods, advertising or other promotional materials, now or hereafter in their possession, custody or control, constituting infringement or relating to the infringement of Lanard's trademark, trade dress or Copyrighted Works together with all drawings, plates, molds, tooling, computer programs and other material for making such infringing articles, advertisements or promotional materials, and other means of making same;

6.      That Defendants account for and pay over to Lanard all of the profits realized by Defendants, or others acting in concert or participation with Defendants, from the sale and distribution of products that bear the infringing FUN SPLASHERS mark, embody trade dress confusingly similar to Lanard's trade dress or substantially similar to its Copyrighted Works, or any variant thereof confusingly similar thereto; and from the sale and distribution of products resulting from Defendants' unfair methods of competition as alleged herein;

7.      Requiring Defendants to recall any and all infringing goods including, but not limited to, the "Fun Splasher" toy water sprinkler, or other products incorporating the infringing "Fun Splashers" mark, trade dress confusingly similar to Lanard's trade dress or substantially similar to its Copyrighted Works;

8.      That Defendants, pursuant to 15 U.S.C. § 1116(a), be directed to file with the Court and serve upon Lanard within thirty (30) days after entry of the injunction, a report in writing under oath setting forth in detail the manner and form in which it has complied with the injunction;

9.      That Lanard recover its damages sustained as a result of Defendants' unfair competition and infringement of Lanard's toy trade dress;

10.    That Lanard be awarded three times Defendants' profits or three times Lanard's damages, whichever is greater, together with its reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1117(a) and (b);

11.    Requiring Defendants to account for and pay to Lanard (i) all gains, profits or advantages derived from the infringement of Lanard's Copyrighted Works; and/or (ii) such damages as Lanard has sustained in consequences of such infringement;

12.    That Lanard be awarded punitive damages pursuant to the common law of the State of New York from Defendants' willful and wanton tortious conduct as alleged herein;

13.    Awarding Lanard its attorneys fees incurred in this action;

14.    That Lanard recover the costs of this action; and

15.    That Lanard be granted such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMAND

Lanard hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38.


Respectfully submitted,

BAKER BOTTS L.L.P.,


Dated:  March 7, 2007          By:  _____

Russell H. Falconer (RF:3231)
Paul J. Reilly (PR:0217)
30 Rockefeller Plaza
New York, New York 10112
(212) 408-2500


Attorneys for Plaintiff
Lanard Toys Ltd.

NY02:578393.1